**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CARL HOOPS,

                     Plaintiff,                            **MEMORANDUM OF**
              -against-                      **DECISION AND ORDER**
                                                     10-CV-2777 (ADS)(ARL)
KEYSPAN ENERGY and NATIONAL GRID
USA,

                     Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Paul L. Dashefsky, Esq.**
*Attorney for the Plaintiff*
317 Middle Country Road
Smithtown, NY 11787

**McCarter & English, LLP**
*Attorneys for the Defendants*
245 Park Avenue
New York, NY 10167
      By:  David S. Kim, Esq.
            Patrick M. Collins, Esq., Of Counsel

**SPATT, District Judge**.

        On June 16, 2010, Carl Hoops ("Hoops" or "the Plaintiff") commenced this lawsuit against his employers KeySpan Corporation ("KeySpan") and National Grid USA ("National Grid" and together with KeySpan "the Defendants"), alleging that they violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to incorporate miscellaneous shift differentials into his regular rate of pay for the purposes of overtime compensation. In addition, the Plaintiff alleges that the Defendants failed to compensate him for the laundering of his issued uniform in violation of the New York State Labor Law ("New York Labor Law") as defined in

1

the Compilation of Codes, Rules and Regulations of the State of New York (the "N.Y. Rules and Regulations"), tit. 12 § 142-2.5. Presently before the Court is the Defendants' motion to dismiss: (1) the FLSA cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on the ground that the claim is preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, et. seq.; and (2) the New York Labor Law cause of action pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") on the ground that the Court lacks subject matter jurisdiction because the state law claim does not arise from the same case or controversy as the federal law claim. For the reasons that follow, the Defendants' motion to dismiss the complaint is granted in its entirety and the Court affords the Plaintiff twenty days from the date of this order to serve an amended complaint only as to the FLSA cause of action.

**I. BACKGROUND**

The following facts are drawn from the Plaintiff's complaint, the parties' submissions and the documents that were incorporated by specific reference therein.

The Plaintiff, Carl Hoops, commenced employment with KeySpan Energy in 1978. KeySpan is a supplier of natural gas in parts of New York City, Long Island, Massachusetts, and New Hampshire. The complaint does not reference Hoops' job responsibilities beyond stating that, beginning in 1999, he became an "Emergency Service Specialist." When performing his job responsibilities, Hoops is required to wear a uniform and he is also responsible for the laundering and maintenance of the uniform. In or about December 2007, KeySpan was purchased by National Grid USA. Both KeySpan and National Grid are named as defendants in the instant action. However, the relationship between KeySpan and National Grid as they relate to the Plaintiff's employment in the past and currently is not entirely clear. Because the

distinction is not relevant for the purposes of this motion, the Court refers to KeySpan and National Grid collectively as "the Company" or "the Defendants."

As an employee of the Company, the terms of Hoops' employment are governed by a collective bargaining agreement (the "CBA") between his union, Local 1049, International Brotherhood of Electrical Workers ("the Union") and the Company. (See Affirmation of Patrick M. Collins in Support of Motion to Dismiss (Collins Aff."), Exs. 1–3 (excerpts from the CBA).) The CBA between the Union and the Company contains grievance procedures that an employee is required to follow when there is an alleged violation of any provisions of the CBA, or when there is a dispute involving the interpretation of the CBA. (Collins Aff., Ex. 2 (CBA Art. XVIII(a)).)

In addition, pursuant to unspecified provisions in the CBA, employees such as Hoops are entitled to receive miscellaneous shift differentials ("contractual shift differentials"). According to Hoops, after the Company implemented a payroll program for computing wages called "Smart Time" approximately ten years ago, the Company ceased including the "full and appropriate contractual shift differentials" in the calculation of his overtime rate. (Compl., ¶ 10.) Hoops alleges that, by failing to include the contractual shift differentials in his regular rate of pay for purposes of calculating his overtime, the Company violated its obligations under the FLSA to pay his overtime compensation at the minimum required rate of time and a half of his regular rate of pay.

For their part, the Defendants maintain that Hoops is not only seeking a determination with regard to his overtime compensation, but he is asking the Court to decide if he should have been receiving certain contractual shift differentials in his straight-time wage rate as well. To determine whether Hoops was entitled to certain contractual shift differentials in his straight-time

wage rate (the "threshold question"), and therefore also entitled to have them included in his regular rate for the purposes of overtime compensation, the Court would have to interpret the CBA. Thus, the Defendants' contend that Hoops' FLSA claim is preempted by the LMRA, which requires Hoops to follow the grievance procedures in the CBA as to the threshold question before seeking adjudication on his FLSA claim.

Finally, Hoops also alleges that the Company is required under the New York Labor Law to provide him with weekly sums to cover the maintenance of his uniform, and that the Company has violated the Labor Law by failing to make such payments for an undisclosed period of time. In response, the Defendants' argue that the Court lacks jurisdiction over the Labor Law claim both because the FLSA claim is improper, and because the Labor Law claim does not arise out of the same case or controversy as the FLSA claim.

## II. DISCUSSION

### A. Standards of Review

#### 1. Rule 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113.

#### 2. Rule 12(b)(6) Motion to Dismiss

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

4

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Hertz Corp. V. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).

**B. Whether the Court may Consider the CBA in the Motions to Dismiss**

As an initial matter, although the Plaintiff raises no objection, the Court must determine whether it may consider the portions of the CBA attached as exhibits to the Collins Affirmation

5

in ruling on the 12(b)(1) and 12(b)(6) motions to dismiss. The CBA excerpts are from the CBA between the Union and National Grid that was operative from February 14, 2008 until February 13, 2011.

It is well-settled that when considering a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001). With respect to the Court's 12(b)(6) analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir.1993) (citation omitted).

Here, the complaint specifically identifies the CBA as the source of the Defendants' obligation "to pay the Plaintiff miscellaneous shift differentials, including shift differentials for work performed at night." (Compl., ¶ 10). Although the Plaintiff refers to the CBA in his opposition brief as the CBA between the Union and KeySpan, the Plaintiff does not dispute the accuracy or applicability of the CBA attached to the Collins Affirmation. Accordingly, the Court finds that the CBA was incorporated by reference into the complaint and may properly be considered the Rule 12(b) motions to dismiss.

## C. As to the Rule 12(b)(6) Motion to Dismiss the FLSA Claim

In the complaint, the Plaintiff alleges that the Defendants violated his statutory right to overtime compensation under the FLSA by failing to include certain contractual shift differentials, including shift differentials for work performed at night, in his regular rate of pay when calculating his overtime compensation. (Compl., ¶ 10.) The Defendants do not dispute

that in order to resolve the Plaintiff's FLSA claim, the Court would ultimately have to determine whether certain contractual shift differentials should be included in the Plaintiff's regular rate for the purposes of overtime calculation. (Def.'s Br. at 6 admitting that the Court would have to determine "whether any portion of 'miscellaneous shift differentials' were paid under provisions of the CBA or circumstances that would require them to be included in plaintiff's regular rate for purposes of FLSA overtime pay".) However, the Defendants argue that before the Court can reach the statutory question, it must first decide the threshold question of whether the Plaintiff was entitled to receive contractual shift differentials in his straight-time wage rate—a determination that requires interpretation of the CBA and therefore exhaustion of the CBA's grievance procedures.

The FLSA, states in relevant part, that

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed

29 U.S.C. § 207(a)(1) ("Section 207"). When calculating an employee's "regular rate" of pay for the purposes of section 207, an employer is required to include "extra compensation, such as nightshift differentials" that were included in the employees straight-time wage rate. 29 C.F.R. 778.207; see Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 469; 68 S. Ct. 1186, 92 L. Ed. 1502 (1948) ("Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such wage represents a shift differential or higher wages because of the character of the work done or the time at which he is required to labor rather than an overtime premium. Such payments enter into the determination of the regular rate of pay."); see also

O'Brien v. Town of Agawam, 350 F.3d 279, 295 (1st Cir. 2003) ("The case law is unequivocal that shift-differential pay must be included in an employee's FLSA 'regular rate.'"); Scott v. City of New York, 592 F. Supp. 2d 386, 409 (S.D.N.Y. 2008).

In reading the parties submissions with respect to the instant motion, one would think that they relate to two completely different cases. The source of the confusion appears to be an ambiguity as to whether: (1) the Plaintiff's claim is limited to the calculation of overtime compensation based on contractual shift differentials he received in his straight-time wage rate, or (2) the Plaintiff is also seeking an initial determination as to whether he was entitled under the CBA to receive certain contractual shift differentials. This distinction is relevant because, contrary to the Plaintiff's assertion that the existence of the CBA should not impact the adjudication of his claim, to the extent the Court must make factual determinations about the meaning of a collective bargaining agreement, that decision is governed by the Labor Management Relations Act.

Section 301 of the LMRA ("section 301") provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). The section is accorded "unusual pre-emptive power." Livadas v. Bradshaw, 512 U.S. 107, 122 n. 16, 114 S. Ct. 2068, 129 L.Ed.2d 93 (1994); Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003); Wynn v. AC Rochester, 273 F.3d 153 (2d Cir. 2001). Section 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, Inc. v. Williams, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859 n. 3, 107 S. Ct. 2161, 95 L. Ed.

2d 791 (1987)). In deference to the collective bargaining process, before bringing an action under Section 301, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement." Dougherty v. American Tel. and Tel. Co., 902 F.2d 201, 203 (2d Cir. 1990) (citing Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563, 96 S. Ct. 1048, 1055, 47 L. Ed. 2d 231 (1976)).

Under Article XVII of the CBA, when the parties have a dispute "involving the interpretation" of the CBA, the Union agrees to first attempt to resolve the issue through specified internal steps, and then agrees to submit any unresolved disputes to arbitration. (Collins Aff., Ex. 2.) It is undisputed that "[t]he FLSA does not provide a remedy regarding what particular wage rate should be paid beyond minimum wage", Brown v. U.S. Postal Service, No. 95-CV-1442, 1996 U.S. Dist. Lexis 19753, at *7 (S.D.N.Y. Oct. 28, 1996), and that any right the Plaintiff may have to receive shift differentials in his straight-time wage rate is derived from the CBA. (See Compl., ¶ 10 (stating that the Defendants were "required" by the CBA "to pay the Plaintiff miscellaneous shift differentials, including shift differentials for work performed at night").) Thus, a determination as to whether certain contractual shift differentials should have been included in the Plaintiff's straight-time wage rate is a factual question that requires an interpretation of the CBA, and therefore is subject to the grievance procedures in the CBA and the LMRA.

By contrast, as previously stated, the Plaintiff's right to have contractual shift differentials included in his regular rate of pay for calculating overtime compensation does not spring from the CBA, but rather from the FLSA. 29 U.S.C. 207(a)(1); see Eldred v. Comforce Corp., No. 08-CV-1171, 2010 WL 812698, at *6 (N.D.N.Y. March 2, 2010); Scott v. City of New York, 592 F. Supp. 2d. 386, 409 (S.D.N.Y. 2008). When the dispute involves the violation

of statutory rights under the FLSA, absent a "clear and unmistakable waiver", which is not present in the CBA, an employee is not required to exhaust the grievance procedure prior to bringing a federal lawsuit. See Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 79–80, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998); Tran v. Tran, 54 F.3d 115, 117–18 (2d Cir. 1995) (reversing grant of summary judgment and holding that a plaintiff was not required to seek arbitration under the grievance procedures of a collective bargaining agreement before bringing an FLSA claim in federal court); Giles v. City of New York, 41 F. Supp. 2d 308 (S.D.N.Y. 1999). Thus, if the Plaintiff has been receiving contractual shift differentials in his straight-time pay, and the issue is whether those shift differentials should have been included in his regular rate for purposes of overtime compensation under the FLSA, the Plaintiff was not required by the LMRA to first follow the grievance procedures in the CBA.

Here, it is undisputed that the Plaintiff did not exhaust any of the grievance procedures outlined in the CBA prior to filing this lawsuit. Therefore, whether the Plaintiff was required to exhaust the grievance procedures prior to bringing the instant lawsuit, and therefore whether he has stated a claim under Rule 12(b)(6), hinges on whether his claim is solely based on the statute, or whether it also requires interpretation of the CBA.

As previously stated, reference to the complaint cannot resolve this issue. Ultimately, it is what the Plaintiff failed to include in his complaint, and elaborated on in his opposition to the instant motion, that guides the Court's decision in this matter; namely, that the Plaintiff acknowledges that the Court will first have to determine "what straight-time wage rate the Plaintiff was entitled to be paid (including night differential premium pay for hours worked during night shifts)" before reaching the issue of whether the shift differentials should have been included in his regular rate for overtime purposes. (Pl.'s Br. at 5.)

Where, as here, "the alleged violations hinges on the collective bargaining agreements' definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provisions." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., No. 10-CV-2661, 2011 WL 321186, at * 4 (S.D.N.Y. Jan. 28, 2011); Vadino v. A. Valey Engineers, 903 F.2d 253, 266 (3d Cir. 1990) ( "[C]laims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA."); Conzo v. City of New York, 438 F. Supp. 2d 432, 437 (S.D.N.Y. 2006) ("If the claim is based on rights arising from the collective bargaining agreement, the plaintiff is required to exhaust remedies created by the agreement.") (quoting Collins v. Lobdell, 188 F.3d 1124, 1127 (9th Cir. 1999)).

Because the instant case would require the Court to interpret the CBA to determine whether it embodied an agreement between the parties to pay the Plaintiff contractual shift differentials for certain shifts and work, the Plaintiff's claim is preempted by the LMRA. See Vera, 335 F.3d at 115 (holding that "[a]lthough the boundary between claims requiring interpretation of a CBA and ones that merely requires such an agreement to be consulted is elusive," a case required interpretation of the CBA and was therefore preempted by Section 301 where the court had to "interpret the CBA to determine whether it embodie[d] an agreement between the parties to alter the common law rule regarding when commissions are earned") (internal quotation marks and citation omitted).

Finally, the fact that a court may ultimately need to decide the FLSA claim does not change this analysis. Although addressed in the context of whether a plaintiff could challenge a statutory claim previously submitted to arbitration under a collective bargaining grievance procedure, the Supreme Court's holdings in Alexander v. Gardner-Denver Co., 415 U.S. 36, 94

S. Ct. 1011, 39 L. Ed. 2d 147 (1974) and Barrentine v. Arkansas-Best Friend Sys., Inc., 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981), highlight the difference between the appropriate forums for contractual claims governed by the LMRA and statutory claims. In Gardner-Denver, in ruling on an employee's right to bring a lawsuit under Title VII outside of a grievance procedure, the Court stated that:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

415 U.S. at 49–50, 94 S. Ct. 1011 (emphasis added). As the Court elaborated in Barrentine, a federal court is the appropriate forum for a wage and hour claim where the "threshold question" is one of statutory construction, as opposed to "preliminary factual questions" that can be decided by an arbitrator. 450 U.S. 728, 738 n. 13, 743, 101 S. Ct. 1437.

The Third Circuit in Vadino v. A. Valey Engineers, directly addressed the issue before this Court in the context of summary judgment and held:

> We are not aware of . . . any case where a court has resolved as a threshold matter in a FLSA action a dispute concerning the amount of wages that should have been paid under the terms of the collective bargaining agreement. In short, while claims resting on the language of section 7(a) are clearly cognizable under that section, we believe that claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301.

903 F.2d at 266. This Court also is not aware of any case where a court resolved a threshold wage issue that required interpretation of a collective bargaining agreement simply because an FLSA claim was also involved.

Therefore, based on the Plaintiff's representation that the Court would need to interpret the CBA to determine his entitlement to contractual shift differentials before adjudicating the FLSA claim, the Court grants the Defendants' motion to dismiss. However, the Court recognizes that there is a possibility that some, if not all, of the contractual shift differentials underlying the Plaintiff's FLSA claim may have been included in his straight-time wage rate and therefore would not require interpretation of the CBA. Accordingly, the Court affords the Plaintiff twenty days from the date of this order to serve an amended complaint clarifying this ambiguity.

### **D. As to the Rule 12(b)(1) Motion to Dismiss the New York Labor Law Claim**

In addition to overtime compensation under the FLSA, the Plaintiff also seeks damages under the Article 19 of New York Labor Law for failure to pay a weekly sum for laundry and maintenance services for the Plaintiff's required uniforms (Compl. ¶ 14–17). Specifically, the N.Y. Rules and Regulations require that "[w]here an employer fails to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage prescribed herein". 12 N.Y.C.R.R. 142-2.5. With respect to this claim, the Court finds that, regardless of whether the Plaintiff can otherwise state a cognizable FLSA cause of action, the Court lacks subject matter jurisdiction under Section 1367(a) because the Labor Law claim does not arise from the same case or controversy as the FLSA claim.

Section 1367(a) grants supplemental jurisdiction to any related claim that arises out of the same case or controversy as the original claim granted subject-matter jurisdiction. 28 U.S.C. §

13

1367(a). The Court can only exercise supplemental jurisdiction over the Plaintiff's Labor Law claim if it arises from the same common nucleus of operative fact as the Plaintiff's federal cause of action. Carnegie-Mellon Univ. v. Cohill. 484 U.S. 343, 349, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ("[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966)). When determining whether claims arise from a "common nucleus of operative fact," the Second Circuit looks to whether "the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought facts underlying the state claim before the court." Achtman v. Kirby, McInerney & Squire LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, the Court finds that the FLSA and the Labor Law claims do not arise out of the same common nucleus of operative fact. The FLSA claim is for overtime compensation, and the payments that the Defendants allegedly owe for the maintenance and laundering of uniforms constitute additional compensation in addition to the Plaintiff's straight-time wage rate. This additional compensation is not considered a part of the Plaintiff's wages, and therefore does not factor in to the calculation of the Plaintiff's regular rate for purposes of overtime compensation. Accordingly, because the Plaintiff's Labor Law claim fails to meet the same "case or controversy" requirement of Section 1367(a), the Court grants the Defendants' motion to dismiss.

## III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Defendants' motion to dismiss the Plaintiff's FLSA claim is granted without prejudice, it is further

**ORDERED**, that the Defendants' motion to dismiss the Plaintiff's New York Labor Law claim is granted, and it is further

**ORDERED**, that the Plaintiff is afforded twenty days from the date of this order to serve an amended complaint only as to the FLSA claim.


**SO ORDERED**.
Dated: Central Islip, New York
March 8, 2011

                                          _/s/ Arthur D. Spatt_
                                          ARTHUR D. SPATT
                                          United States District Judge